UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA SAWATZKY,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:16-cv-02770 AC<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.[1]

For the reasons that follow, the court will grant plaintiff's motion for summary judgment,

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986). SSI is paid financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels…").

1

deny the Commissioner's cross-motion for summary judgment. The matter will be reversed and remanded to the Commissioner for an immediate award of benefits.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits on March 29, 2013, and for supplemental security income on April 15, 2013. Administrative Record ("AR") 15.[2] The disability onset date for both applications was alleged to be December 29, 2012. Id. The applications were disapproved initially and on reconsideration. Id. On February 5, 2015, Administrative Law Judge ("ALJ") Bradlee Welton presided over the hearing on plaintiff's challenge to the disapprovals. AR 34-66 (transcript). Plaintiff, who was present and testified at the hearing, was represented by attorney Langley Kreuze. AR 35. Kathleen McAlpine, a Vocational Expert ("VE"), also testified at the hearing. Id.

On June 25, 2015, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 15-27 (decision), 28-32 (exhibit list). On September 19, 2016, after receiving Exhibit 18E, Representative Brief dated August 31, 2015 as an additional exhibit, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision and additional exhibit list).

Plaintiff filed this action on November 22, 2016. ECF No. 1; see 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 7, 10. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 19 (plaintiff's summary judgment motion), 25 (Commissioner's summary judgment motion), 28 (plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was born on July 20, 1970, and accordingly was 42 years old on the alleged disability onset date, making plaintiff a "younger person" under the regulations, when she filed

---

[2] The AR is electronically filed at ECF Nos. 12-3 to 12-11 (AR 1 to AR 517).

her applications.[3] AR 26; 231; 238. The ALJ found that plaintiff had at least a high school education and can communicate in English.

Plaintiff worked as a floor manager at a rehabilitation center from March 2011 to December 2012. AR 312. Before that, she worked as an "ARH Recovery Homes" at another rehabilitation center from 2007 to 2011; she was a dishwasher from 2006 to 2007; a trophy maker from 2004 and 2005; and a deliverer from 2003 to 2004. Id.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

---

[3] See 20 C.F.R. §§ 404.1563(c) ("younger person"), 416.963(c) (same).

3

Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . . .'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

4

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2017.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since December 29, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: borderline intellectual functioning and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range

| | |
|---|---|
| 1 | of work at all exertional levels but with the following nonexertional limitations: she could not climb ladders, ropes, or scaffolds or work at unprotected heights. She could do simple one- to two-step tasks in a low-stress work environment requiring only occasional decision-making, only occasional changes in the work setting, and only occasional requirements for exercising judgment, with no fast-paced production rate work, and with only occasional interaction with the public. |

6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. [Step 5] The claimant was born on July 20, 1970 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 29, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 17-27.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1514(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 27.

## VI. ANALYSIS

Plaintiff raises three issues: (1) the ALJ improperly considered the opinion of treating and examining doctors; (2) the ALJ's residual functional capacity assessment is incomplete; and (3) the jobs found suitable by the ALJ are beyond the ALJ's own residual functional capacity assessment. ECF No. 19 at 13, 18, 19. Plaintiff requests that the treating physician's opinion be credited as true, and that plaintiff be awarded benefits "on the basis that there can be no serious

doubt, after a reading of the entire record, that she is disabled and would be found so on remand." Id. at 18 (citing Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014). Because the court agrees that reversal and remand for an immediate award of benefits is appropriate on grounds that the ALJ erroneously evaluated the opinion of plaintiff's treating physician, only that argument is addressed here.

### A. Opinion of Treating Neuropsychologist Dr. Connor

The Ninth Circuit distinguishes "among the opinions of three types of physicians: (1) those who treat the claimant (treating physician); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). Accordingly, "the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014) (citing Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)). If a treating physician's opinion is not contradicted by another doctor, it may only be rejected for clear and convincing reasons supported by substantial evidence. Orn, 495 F.3d at 632 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Even if the treating physician's opinion is contradicted by another doctor, it may not be rejected unless the ALJ provides specific and legitimate reasons supported by substantial evidence. Id. (quoting Reddick, 157 F.3d at 725).

In this case, the ALJ considered the opinions of four mental health professionals, including claimant's treating physician. Non-examining physicians L. Colsky, M.D. and P. Ryan, M.D. opined, in relevant part, that plaintiff's "condition [were] not severe enough to keep" plaintiff from working. AR 98; 124. They further opined that the opinion of plaintiff's treating neuropsychologist, Bonnie Connor, Ph.D., was not supported by the "totality of the evidence" and "overestimate[s]" the severity of plaintiff's restrictions and limitations. AR 81; 122. The opinions of Dr. Colsky and Dr. Ryan were given great weight. AR 24. Accordingly, the question

7

before the court is whether the ALJ provided specific and legitimate reasons for discounting portions of the opinion of plaintiff's treating physician. The undersigned finds the ALJ did not do so here.

1. Opinion of Dr. Connor

Plaintiff was referred to treating neuropsychologist[4] Dr. Connor in 2013 by Dr. Neva Monigatti-Lake after plaintiff reported "confusion, judgment issues, difficulty concentrating, occasional difficulty speaking and explaining things, and mild cognitive impairment" due to a physical assault that resulted in a head injury in 2011. AR 438. Dr. Connor examined plaintiff on May 31, 2013, June 15, 2013, June 23, 2013, and November 21, 2013. AR 515.

Based on plaintiff's examination dates May 31, 2013 and June 15, 2013, Dr. Connor prepared a neuropsychological evaluation report. AR 445. In the report's conclusion section, Dr. Connor opined that "[t]he patient has had a lifelong difficulties with learning disabilities and ADHD. The traumatic brain injury of June 7, 2011 has compounded these problems." AR 453. She stated, among other things, that plaintiff had impairment in her "performance on tasks of verbal fluency," "efficiency at learning new information," "ability to recall new information immediately," and "delayed recall after learning new verbal information." AR 453. Dr. Connor further opined that plaintiff's "central auditory processing deficits significantly affect processing, remembering, and recalling verbally presented material." Id. Dr. Connor based her conclusions on various tests administered, including the "WAIS-III" and "Meyers Neuropsychological Battery." AR 447-448. She also relied on plaintiff's self-reporting and social history information provided by plaintiff's adoptive mother. AR 447.

Dr. Connor observed that plaintiff was readily participating, volunteering information, "cooperative," "cheerful," and "willing[] to give all tasks her best effort." AR 447. Dr. Connor did note that during a difficult task, plaintiff was frustrated and stated, "I'm going to behave myself right now." AR 447. Dr. Connor's diagnostic impression was Learning Disorder, Central

---

[4] The Administration "generally give(s) more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." See 20 C.F.R. § 404.1527(c)(5).

8

Auditory Processing Disorder, Attention Deficit Hyperactivity Disorder (ADHD), trauma without a skull fracture, late effects of Intracranial Injury without skull fracture, symptoms affecting occupational and social functioning, and a GAF[5] score of 48. AR 445.

In her Mental Residual Functional Capacity Statement dated January 16, 2015, Dr. Connor found plaintiff's mental abilities to remember locations and work like procedures; understand and remember very short and simple instructions; carry out short and simple instructions; complete a normal workday and workweek without interruptions from psychologically based systems; and perform at a consistent pace without an unreasonable number and length of rest periods, precluded her performance for 10% of an 8-hour work day. AR 516. She also found plaintiff's mental abilities to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods of time; perform activities within a schedule; maintain regular attendance, and be punctual and within customary tolerances; sustain an ordinary routine without special supervision; and work in coordination with or in proximity to other without being distracted by them, precluded her performance for 15% or more of an 8-hour work day. Id. Dr. Connor also found that plaintiff's social interaction and adaption categories ranged from not precluding plaintiff's performance at work to precluding her performance for 15% or more of an 8-hour work day. AR 516-517. Finally, she indicated that as a result of her mental impairments, plaintiff would likely be "absent from work" "5 days or more" and that plaintiff would be unable to complete an 8-hour work day "5 days or more" per month. AR 517.

The ALJ gave "little weight" to Dr. Connor's opinion regarding plaintiff's mental limitations. AR 24. However, the ALJ did note that "most of Dr. Connor's concerns were taken

---

[5] The Ninth Circuit has defined a GAF score as a "rough estimate" of an individual's psychological, social and occupational functioning, used to reflect the individual's need for treatment. Garrison, 759 F.3d at 1003 n.4 (quoting Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998)). A GAF score of 41-50 describes "serious symptoms" or "any serious impairment in social, occupational or social functioning," while scores of 51-60 describe "moderate symptoms." Id. Because GAF scores "are typically assessed in controlled, clinical sets that may differ from work environments in important respects," they are not determinative of disability. However, they are "a useful measurement" of functioning. Id.

into account for the residual functional capacity, including limiting the claimant to very simple work, limiting her interactions with the public, limiting her to work with only occasional changes, and limiting her to no fast-paced work." AR 24.

### 2. The ALJ's Reasons for Giving Dr. Connor "Little Weight"

The ALJ gave five reasons for according "little weight" to Dr. Connor's opinion: (1) Dr. Connor "did not explain how her findings correlated with the claimant's ability to sustain regular work activity for a long period after the injury; (2) she "did not explain how she arrived at her conclusions after not seeing the claimant in over a year; (3) "a number of recommendations for treatment and follow-up" were made, "none of which were followed by the claimant;" (4) "this lack of follow up reinforces the inference that the claimant underwent the examination that formed the basis [of] Dr. Connor's opinion not in an attempt to seek treatment for symptoms, but rather through attorney referral and in connection with an effort to generate evidence for the current appeal;" (5) and "the doctor presumably was paid for the report." AR 24.

The ALJ's description of plaintiff's ability to sustain regular work activity for a long period after the injury mischaracterizes the record. Although plaintiff held a job as a floor manager for a year and half after her injury, plaintiff testified that she had trouble doing her job after the head injury; she "thought everybody was out to get [her]," she couldn't "complete a lot of" her tasks, she would get "overwhelmed by other people," and at one point she acted out of "impulse" and slept with a client which subsequently led to her being fired. AR 51-53. This is consistent with the treatment records that show plaintiff has a "history of poor judgment and impulsivity," and consistently has presented with problems involving judgment issues, confusion, and difficulty concentrating after her head injury. AR 438; 440; 465. For these reasons, substantial evidence does not support the ALJ's finding that plaintiff's ability to work after the injury was inconsistent with Dr. Connor's opinion.

The ALJ's rejection of Dr. Connor's opinion based on not seeing the plaintiff in over a year and plaintiff's failure to follow recommended treatment is contrary to established Ninth Circuit law. "[T]he fact that [a] claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude

that [a physician's] assessment of [a] claimant's condition is inaccurate." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996). Moreover, the Commissioner argues that medical treatment sought in 2014 is inconsistent with the mental symptoms and limitations prescribed by Dr. Connor in 2015. ECF No. 25 at 15. However, these medical records also note doctor visits with complaints of anxiety, depression, PTSD which are psychological conditions that appear to overlap with plaintiff's mental impairments. See AR 483, 486, 489, 492, 496, 499; see also AR 452 (Dr. Connor opined that plaintiffs test scores indicated that plaintiff's "elevations on low positive emotions scale indicate symptoms of depression" and that "individuals with elevated scores on this scare are at increased risk for symptoms of depression."); AR 446 (Dr. Connor opined that plaintiff was "reporting PTSD-type symptoms" and "the severity and degree of reported symptoms suggest PTSD is possible present.") The ALJ fails to provide specific, legitimate reasons for rejecting Dr. Connor's opinion based on plaintiff's length of time between treatment and lack of treatment.

Finally, the ALJ's "presumption" that Dr. Connor was paid for her report, and that the treatment was sought only to generate evidence for the current appeal, is unsupported. "'The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them' unless there is additional evidence demonstrating impropriety." Case v. Astrue, 425 F. App'x 565, 566 (9th Cir. 2011) (citing Lester, 81 F.3d at 832; Reddick, 157 F.3d 726 (9th Cir. 1998)). Here, the ALJ has failed to identify evidence of impropriety. Accordingly, the ALJ has failed to provide specific and legitimate reasons for rejecting Dr. Connor's opinion.

For the reasons noted above, the ALJ improperly discounted Dr. Connor's opinion and reversal on this point is warranted.

### B. Harmless Error Analysis

As discussed, the ALJ erred in rejecting Dr. Connor's opinions and that error was not harmless. Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court

11

should remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2000).

More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Benecke, 379 F.3d at 593 (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000)).

Under the second step in the remand analysis,[6] the court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2016) (quoting Treichler, 775 F.3d at 1101). Under the third step in this analysis, the court should remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted).

In this case, if Dr. Connor's opinion was credited as true, plaintiff would necessarily be found disabled under the applicable regulations. Specifically, Dr. Connor opined that plaintiff's mental abilities to "perform activities within a schedule" and "sustain an ordinary routine without special supervision" "precluded her performance for 15% or more of an 8-hour work day." AR 516-517. She also indicated that as a result of her mental impairments, plaintiff would likely be "absent from work" "5 days or more." AR 517. When plaintiff's limitations, particularly as described by Dr. Connor, were put to the VE at the hearing, the VE testified that plaintiff would not "be able to maintain full-time employment." AR 63-64. Because the VE found that no jobs

////

---

[6] As discussed above, the first step is satisfied because the ALJ failed to provide legally sufficient reasons for rejecting Dr. Connor's opinion.

were available to plaintiff under the hypothetical incorporating Dr. Connor's opinion, plaintiff is disabled under the Act.

Where the above steps are satisfied, this court must exercise its discretion in determining whether to remand for further proceedings, or for the immediate calculation and award of benefits. Dominguez, 808 F.3d at 407 (if disability finding would necessarily follow if discredited evidence were credited as true, "the district court may exercise its discretion to remand the case for an award of benefits"). If, despite satisfying the above steps, the "record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act," the court should remand for further proceedings. Burrell, 775 F.3d at 1141 (quoting Garrison, 759 F.3d at 1021). However, the court would be "abus[ing] its discretion by remanding for further proceedings where the credit-as-true rule is satisfied and the record afforded no reason to believe that [the plaintiff] is not, in fact, disabled." Garrison, 759 F.3d at 1021.

Here, the record leaves no doubt that the plaintiff is disabled within the meaning of the Act. The VE was provided a hypothetical by plaintiff's attorney that included the limitations of plaintiff being precluded in her performance for 15% of an 8-hour day due to inability to perform activities within a schedule and sustain an ordinary routine without special supervision, as well as missing work 5 days or more in a month. AR 63-64. Based on these hypotheticals, the VE concluded that plaintiff was prevented from maintaining full-time employment. Accordingly, the court finds that plaintiff is disabled within the meaning of the Act and no further fact finding is necessary.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 25), is DENIED;

3. This matter is REVERSED and REMANDED to the Commissioner for an immediate award of benefits; and

////

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: March 22, 2018

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE